**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

BARBARA VALENTI, on behalf of herself and all others similarly situated,

                    Plaintiff,

     v.

SYNERGY CHC CORP.,

                    Defendant.

Case No.:

**COMPLAINT**

---

       Plaintiff Barbara Valenti, on behalf of herself and all others similarly situated ("Plaintiff"), by and through her undersigned counsel, Denlea & Carton LLP, states for her Complaint against Synergy CHC Corp. ("Synergy" or "Defendant"), as follows:

## PRELIMINARY STATEMENT



1.      This action seeks to redress the false, misleading and deceptive advertising and marketing claims that have made Synergy one of the world's largest manufacturers of a purported "memory supplement" or "brain health supplement" called "FOCUSfactor," namely, the claim that a clinical study showed that FOCUSfactor increased memory recall by 44% in six weeks of use.  As set forth in more detail below, that claim (which is the centerpiece of Defendant's ubiquitous marketing campaign) is blatantly false and deceptive because even its own flawed study showed that after six weeks, the difference in the number of words recalled between the study's participants who took a placebo and those that took FOCUSfactor was just 4.3%, not 44%.

2.      The global market for brain-health supplements is expected to reach $5.8 billion by 2023.  A survey conducted by the AARP showed that 26% of Americans aged 50 and older

regularly take supplements, believing they will maintain or enhance their brain health.  They are falling prey to false and deceptive claims and wasting their money.  The Global Council on Brain Health ("GCBH") is a prestigious independent collaborative of scientists, health professionals, scholars, and policy experts from around the world who work in the areas of brain health related to human cognition.  The GCBH has concluded:

> ***There is no convincing evidence to recommend dietary supplements for brain health in healthy older adults***…. For most people, the best way to get your nutrients for brain health is from a healthy diet.  Unless your health care provider has identified that you have a specific nutrient deficiency, there is not sufficient data to justify taking any dietary supplement for brain health.  The GCBH does not endorse any ingredient, product or supplement formulation specifically sold for brain health.  Because no government agency determines dietary supplements are safe or effective before they are sold, consumers should approach supplements claiming to improve or boost brain function with skepticism.  Because dietary supplements can be sold without a government agency first determining that they are safe or and effective before they are sold, consumers should also be aware that in addition to being a waste of money, some supplements could physically harm them.  ***Despite claims to the contrary, brain health supplements have not been established to maintain thinking skills or improve brain function.***  However, there are many other lifestyle habits such as getting enough sleep, exercising regularly, eating a healthy diet, staying mentally active and being socially engaged that are recommended by the council.[1] (Emphasis added.)

3.     But this action has not been commenced to establish that brain-health supplements, including FOCUSfactor, do not work.  Instead, by this action, Plaintiff seeks to redress Synergy's false and deceptive marketing campaign built upon the misleading claim that a clinical study has shown that FOCUSfactor can increase word recall by 44% after six weeks of use, when in fact Synergy's sole study showed only a 4.3% greater increase in word recall when compared to a placebo.  This misleading claim (a tenfold misrepresentation) and the foundation

---

[1]     Global Council on Brain Health (2019). "The Real Deal on Brain Health Supplements: GCBH Recommendations on Vitamins, Minerals, and Other Dietary Supplements."  Available at www.GlobalCouncilOnBrainHealth.org.  DOI: https://doi.org/10.26419/pia.00094.001.

upon which Defendant's marketing is based begat additional misrepresentations, such as claims of "a decrease of 20 years in cognitive aging" (CRC Clinical Study Report: p. 15).

## THE PARTIES

4.      Plaintiff Barbara Valenti is an individual who resides in Queens, New York.

5.      Defendant Synergy is a Nevada corporation with its principal address at 865 Spring Street, Westbrook, Maine 04092.

6.      Upon information and belief, Synergy manufactures, markets and sells FOCUSfactor, "Flat Tummy" (purportedly "a lifestyle brand that provides a suite of nutritional products to help women to achieve their weight management goals"), and Hand MD (a skin care product).  FOCUSfactor represented 71% of Synergy's revenues in the six months ended June 30, 2021.  FOCUSfactor is sold through its website and other retailers such as Costco, Amazon.com, Walmart, Walgreen, CVS, The Vitamin Shoppe and Target.  FOCUSfactor is heavily advertised on major news and entertainment networks.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiff and Defendant are citizens of different states.  28 U.S.C. § 1332(d)(2)(A).  Based on publicly available sources, Plaintiff estimates that Synergy had net revenues of approximately $4.6 million from the sale of FOCUSfactor in New York during the three-year period preceding this action.  Assuming that Synergy's net revenues from the sale of FOCUSfactor is 50% of the total revenues that both Synergy and its retailers recognize from the sale of FOCUSfactor, Synergy and its retailers sold $9.2 million worth of FOCUSfactor in New York during the three-

year period preceding this action.  Synergy charges a premium for FOCUSfactor based on the false claim that FOCUSfactor is ten times more effective than its own study shows.  Statutory damages under GBL §§ 349 and 350 are $50 or $500 *per purchase* plus attorneys' fees.  Plaintiff estimates that between 368,000 and 613,333 sales of separate bottles of FOCUSfactor occurred in New York, yielding enormous potential statutory damages of over $18.4 million.  Plaintiff estimates that there are at least 10,000 potential class members in New York.

8.      The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

9.      This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred within this judicial district and because Defendant has marketed and sold the products at issue in this action within this judicial district and has done business within this judicial district.

## <u>CHOICE OF LAW</u>

11.     New York law governs the state law claims asserted herein by Plaintiff and the New York class she seeks to represent.

12.     New York has a substantial interest in protecting the rights and interests of New York consumers against wrongdoing by companies that market and distribute their products within the State of New York.

**FACTUAL BACKGROUND**

## I.      THE BRAIN-HEALTH SUPPLEMENT MARKET

13.      As stated, there is a significant market for brain-health supplements taken by 26%

of Americans over the age of 50.  The success of the market participants is directly tied to the

magnitude of their false efficacy claims and their marketing budgets.  For example,

FOCUSfactor has been on the market for over 20 years, marketed solely under the aegis of its

own "clinical study" conducted in 2011 and upon which Synergy has made its false 44%

memory recall increase claim.  According to Synergy, it launched a national advertising

campaign in August 2020 targeting adults 45 years of age and older and FOCUSfactor's net

revenue doubled.[2]  Synergy estimates that FOCUSfactor's gross revenues have increased $4 for

every $1 of advertising spend and, as of January 2022, Synergy planned to further expand that

advertising.

14.      In the last three years, FOCUSfactor has faced two major competitors for the

brain-health hucksterism crown:  (a) "Prevagen," sold by Quincy Bioscience Holding Company,

and (b) "Neuriva," sold by Reckitt Benckiser LLC.  Both of those purveyors of purported

memory supplements have been sued in class actions and forced to pay large amounts to

defrauded consumers, as well as forced to throttle their baseless claims.

15.      Prevagen claimed to "improve memory within 90 days," "support healthy brain

function," and similar claims.  Prevagen's purported active ingredient is a protein called

apoaequorin, apparently derived from a species of jellyfish called *Aequorea victoria* — in other

words, the modern version of snake oil.  Needless to say, the maker of Prevagen was sued in a

---

[2] Significantly, the average age of the individuals in the study was 48.4 years, well below the age of typical
clinically manifest cognitive decline, further calling into question the efficacy of a product directed  at an aging,
cognitively impaired community.

number of separate class actions and compelled to pay dearly for its exorbitant claims.  Quincy Bioscience agreed to a settlement of over $40 million in which defrauded consumers received 30% of their purchase price up to $70, and Prevagen had to eliminate its misleading claims.  The Federal Trade Commission and New York Attorney General have also commenced an action against Quincy Bioscience.  That action is ongoing.

16.      Neuriva claimed that it has "clinically proven natural ingredients" that "fuels 5 indicators of brain performance" including "Focus, Memory, Learning, Accuracy, and Concentration."  In reality, none of the Neuriva Products had ever been clinically studied.  The makers of Neuriva, Reckitt Benckiser LLC and RB Health (US) LLC, were sued in a putative class action that was recently settled for approximately $8 million and injunctive relief, providing consumers with proof of purchase $32.50 per purchase up to $65 and without proof of purchase $5 per purchase up to $20.

17.      There are numerous other makers of so-called brain-health supplements that make unfounded claims of efficacy and the competition among them is fierce.  When the marketplace for these brain snake oils is rife with outrageous claims, the only way for the snake oil purveyors to distinguish themselves is to lead the pack in mendacity.

## II.      SYNERGY'S FALSE CLAIMS CONCERNING FOCUS FACTOR

18.      Synergy's marketing of FOCUSfactor centers around its claims that a clinical study it funded in 2011 proves that FOCUSfactor is "clinically shown to improve MEMORY, CONCENTRATION and FOCUS" and FOCUSfactor "improves verbal learning and short term memory by 44%."  For example, in Synergy's national advertising campaign, a consumer turns

into a characterization of Albert Einstein (a characterization that is obviously false and

misleading itself but not the subject of this complaint), followed by the actionable false claims[3]:



*"Wait! How are you doing [all these super-smart things]?"*

*"FOCUSfactor!"*



---

[3]    A sample television commercial for FOCUSfactor is available at
https://www.youtube.com/watch?v=sldtqpCveUk.



*"Improves verbal learning and short-term memory by 44%."*

19.     FOCUSfactor also markets on its website and other sites with the following

format for its claims:



4

20.     A link on the opening page of the FOCUSfactor website takes the visitor to the "Science" page which claims that:  "The findings from our study were simple; FOCUSfactor was shown to improve memory, concentration and attention (focus) following six weeks of administration.  ***More specifically, an increase of 44% in memory recall was reported for those participants in the FOCUSfactor group, compared to those in the placebo group***."  (Emphasis added.)

---

4       Illustration from opening page of FOCUSfactor website.  https://www.focusfactor.com/.



21.     The "Science" page contains a link to the "Full Clinical Study" in which the visitor would expect to see the evidence of FOCUSfactor's claim that "an increase of 44% in memory recall was reported for those participants in the FOCUSfactor group compared to those in the placebo group."  In fact, the "clinical study" makes no such claim or comes to that conclusion.

22.     At the beginning of the study report, it states that:

The present study demonstrates that, compared to placebo, FOCUSfactor improves abilities referred to as memory (i.e., short term memory), attention (e.g., focus), concentration and working memory in healthy adults.  Following 6 weeks of treatment, subjects who received FOCUSfactor had a mean increase in recall of 6.5 words compared to 4.5 words for those who received placebo (t = -4.32, df = 87, p <0.001).  The total words recalled over Trials 1-5 following 6 weeks of treatment (corrected for baseline score) was 51.9 words for subjects receiving FOCUSfactor compared to 49.7 words for subjects receiving placebo (t = -2.98, df =87; p = 0.002).  The significant effect on RAVLT Sum 1-5 supports the hypothesis that FOCUSfactor improves memory, attention (e.g. focus), and concentration.

One can infer from the foregoing that the FOCUSfactor group started with 45.4 words recalled and increased recall to 51.9 words recalled after six weeks, and the placebo group increased recall from 45.2 to 49.7 words after six weeks.  That means the FOCUSfactor group increased the number of words recalled by 14.3% and the placebo group increased word recall by 10%, a difference of 4.3%, not 44%.

23.     Where did FOCUSfactor get its false 44% improvement in recall number which is the linchpin of its false and misleading advertising campaign?  Apparently, some marketing genius at FOCUSfactor had the brilliant (but mendacious) idea that if one was to compare the increased recall of the placebo group of 4.5 words to the increased recall of the FOCUSfactor group of 6.5 words, the FOCUSfactor word increase is 44% more than the placebo group increase.  That ignores, however, the 45.2 – 45.4 words recalled by both the placebo and FOCUSfactor group at the beginning of the study, and the increase in words recalled is merely 14.3% for the FOCUSfactor and 10% for the placebo group, *a 4.3% difference not a 44% difference*.  Significantly, FOCUSfactor did not follow the proper statistical lines.  One needs to compare the placebo numbers with the placebo numbers, and the FOCUSfactor numbers with the FOCUSfactor numbers.  The change in each group is what is then compared to arrive at the true difference.  That is not what was done.  FOCUSfactor crossed statistical lines by comparing the two groups without regard for the respective baselines, resulting in a tenfold statistical error (*i.e.,* a 4.3% difference not a 44% difference).

24.     The increase in words for the placebo group is presumably due to learning the test over the course of six weeks (tending to prove, at least, that better recall can be learned — a good thing), but that would equally apply to the FOCUSfactor group, so a difference of 4.3% is not statistically significant, given the nature of the word recall test.  Stated another way, the

placebo group was able to increase their scores without *ever* having taken FOCUSfactor.  What would account for that increase?

25.     In reality, that delta can be directly attributed to the well-understood and documented neuropsychological testing artifice known as the "practice effect," whereby memory improves due to repeated exposure to the testing material.  Because of the practice effect, scholars have observed that these kinds of tests are particularly ill-suited for drug trials for cognitive therapeutics (much less OTC vitamin/nutraceuticals like FOCUSfactor):

> [S]erial cognitive assessments are used in the development of novel pharmaceutical treatments for conditions affecting cognition.  Inherent limitations of these early Phase I investigational drug trials include the use of healthy volunteers, small sample sizes, the use of scales originally developed for patients with compromised cognition, and short retest intervals.  These factors limit the study's power to detect cognitive changes in healthy volunteers, which is partially due to the learning that results from repeated exposure to the testing materials (i.e., "practice effects").  Individual variability in test performance across time can also limit the findings in these Phase I studies, as intra-individual variability overcomes the drug effect.[5]

26.     Yet this action does not seek to answer the question of whether a 4.3% increase in word recall is statistically significant or even answer the question of whether FOCUSfactor increased word recall to that small degree.  Instead, this action seeks to redress Synergy's false and deceptive marketing campaign built upon the false, misleading and deceptive claim that a clinical study has shown that FOCUSfactor can increase word recall by 44% after six weeks of use.

---

[5]     Beglinger L. J., Gaydos B., Tangphao-Daniels O., Duff K., Kareken D. A., Crawford J., et al.. (2005). "Practice effects and the use of alternate forms in serial neuropsychological testing". *Arch. Clin. Neuropsychol*. 20, 517–529. Available at https://academic.oup.com/acn/article/20/4/517/2682

### III.     PLAINTIFF PURCHASED AND USED FOCUS FACTOR

27.     FOCUSfactor is sold as "FOCUSfactor Original," "FOCUSfactor Extra Strength," and "FOCUSfactor Max Strength."  FOCUSfactor costs approximately $211 -$1,271 per year, depending on bottle size, method of purchase, and dosage.

28.     Plaintiff is a resident of Queens, New York.

29.     Plaintiff purchased FOCUSfactor Original at Walgreens in Middle Village in Queens in or about February 2022 after seeing television ads for the product touting its ability to greatly improve memory, concentration and focus.  Plaintiff took FOCUSfactor but she did not experience improved memory, concentration, or focus, and stopped taking the product.

30.     Prior to purchasing FOCUSfactor, Plaintiff was exposed to Synergy's deceptive marketing that claims that FOCUSfactor was clinically shown to increase memory by 44% after six weeks of use.

31.     Synergy's prominent marketing that claims that FOCUSfactor was clinically shown to increase memory recall by 44% after six weeks is designed to mislead a reasonable consumer acting reasonably under the circumstances, like Plaintiff here, into believing that FOCUSfactor would provide a significant and valuable increase in memory recall.

32.     Had Plaintiff known that FOCUSfactor had not been clinically shown to increase memory recall by 44% or that, in fact, its own study showed that participants taking a placebo increased their recall by 10% simply by taking six recall tests and the study showed that FOCUSfactor offered the prospect of just 4.3% greater recall than a placebo, she would not have purchased it.  At the very least, Plaintiff paid a premium for FOCUSfactor based on a promise of a 44% improvement in memory recall when at best FOCUSfactor only improved memory recall by 4.3%, less than one-tenth of the improvement promised by FOCUSfactor.  For example, there are at least two brain supplements with the same ingredients as FOCUSfactor:  "Mind &

Memory Matrix" made by Nature's Craft and "Brain Booster" made by Rainbow Nutrients. Neither of those supplements, however, make a claim that it will improve memory recall by 44% or any percentage, which explains why FOCUSfactor costs 43% more than those supplements.[6] FOCUSfactor is able to command a premium price based on its false claims.

## CLASS DEFINITION AND ALLEGATIONS

33.     Plaintiff brings this action on behalf of herself and all other similarly situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil Procedure, and seeks certification of the following class (the "Class"):

> All consumers who, within the applicable statute of limitations period, purchased in the State of New York (whether online or in-person) "FOCUSfactor Original," "FOCUSfactor Extra Strength," and "FOCUSfactor Max Strength" which is manufactured, marketed, distributed and/or sold by Defendant (the "Class Product").  Excluded from the class are Defendant, its parents, subsidiaries, affiliates, officers and directors, judicial officers and their immediate family members and associated court staff assigned to this case, and those who purchased the Class Product for resale.

34.     Plaintiff expressly disclaims any intent to seek any recovery in this action for personal injuries that she or any Class member may have suffered.

35.     **Numerosity**.  This action is appropriately suited for a class action.  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff is informed, believes, and thereon alleges, that the proposed Class contains thousands of purchasers of the Class Product who have been damaged by Synergy's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff.

---

[6]     Both Mind & Memory Matrix and Brain Booster cost $.42 per dose, while FOCUSfactor costs $.60 per dose or 43% more than its competitors.

36.    **Existence and Predominance of Common Questions of Law and Fact**.  This

action involves questions of law and fact common to the Class.  The common legal and factual

questions include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant labeled, advertised, marketed, and/or sold the Class Product as providing a 44% increase in memory recall.

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Class Product as providing a 44% increase in memory recall was and/or is false, fraudulent, deceptive, and/or misleading.

37.    **Typicality**.  Plaintiff's claims are typical of the claims of the members of the

Class, because, *inter alia*, all Class members have been injured through the uniform misconduct

described above and were subject to Synergy's blatant misrepresentation that the Class Product

provided a 44% increase in memory recall after six weeks of use.  Moreover, Plaintiff's claims

are typical of the Class members' claims.  Plaintiff is advancing the same claims and legal

theories on behalf of herself and all members of the Class.

38.    **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the

interests of the members of the Class.  Plaintiff purchased the Class Product, and she was harmed

by Synergy's deceptive misrepresentations.  Plaintiff has therefore suffered an injury in fact as a

result of Synergy's conduct, as did all Class members who purchased a Class Product.

39.    **Superiority**.  A class action is superior to other methods for the fair and efficient

adjudication of this controversy.  The damages or other financial detriment suffered by

individual Class members is relatively small compared to the burden and expense that would be

entailed by individual litigation of their claims against Synergy.  It would be virtually impossible

for a member of the Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Further, even if the Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

40.     Plaintiff seeks monetary damages, including statutory damages on behalf of the entire Class.  Unless a Class is certified, Synergy will be allowed to profit from its deceptive practices, while Plaintiff and the members of the Class will have suffered damages.

## COUNT I
### (Violation of New York General Business Law Section 349)

41.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 40 as if fully set forth herein.

42.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

43.     By labeling, advertising, marketing, distributing, and/or selling the Class Product to Plaintiff and the other Class members as providing a 44% increase in memory recall after six weeks of use, Synergy engaged in, and continues to engage in, deceptive acts and practices because the Class Product does not, in fact, provide a 44% increase in memory recall after six weeks of use.

44.     In taking these actions, Synergy failed to disclose material information about FOCUSfactor, including the fact that its own study showed a mere 4.3% greater memory recall when compared to a placebo, which omissions were misleading in a material respect to consumers and resulted in the purchase of the Class Product.

45.     Synergy has deceptively advertised, marketed, promoted, distributed, and sold the Class Product to consumers.

46.     Synergy's conduct was consumer oriented.

47.     Synergy engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

48.     Synergy's false claims were and are misleading in a material respect as to whether the Class Product provides a 44% increase in memory recall after six weeks of use.

49.     Based on, among other things, Synergy's knowledge that the Class Product did not provide a 44% increase in memory recall after six weeks of use, Plaintiff and other consumers would be misled into purchasing the Class Product and/or paying a premium price for the Class Product.

50.     Plaintiff and the Class members have been aggrieved by and have suffered losses as a result of Synergy's violations of Section 349 of the New York General Business Law.  By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff and the members of the Class have been substantially injured by purchasing and/or overpaying for the Class Product that is not what Synergy represents it to be.

51.     By reason of the foregoing, Synergy's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and Synergy is liable to Plaintiff and the Class for the actual damages that they have suffered as a

result of Synergy's actions, the amount of such damages to be determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

52.     Synergy's conduct, as alleged herein, in violation of Section 349 of the New York General Business Law was engaged in by Synergy willfully and/or knowingly.  Accordingly, Plaintiff and members of the Class are entitled to an award of damages above and beyond their actual damages in accordance with Section 349(h) of the New York General Business Law.

<u>COUNT II</u>
**(Violation of New York General Business Law Section 350)**

53.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 40 as if fully set forth herein.

54.     Synergy's marketing, and advertising of the Class Product is "misleading in a material respect," as it fails to disclose to consumers material information in Synergy's sole possession and, thus, is "false advertising."

55.     No rational individual would purchase the Class Product at the premium prices at which they are sold if that individual knew that the Class Product did not provide a 44% increase in memory recall after six weeks of use, which is how Synergy markets the Class Product.

56.     Synergy's advertisements and marketing of the Class Product as alleged were consumer oriented.

57.     Synergy's advertisements and marketing of the Class Product as alleged were misleading in a material respect.

58.     By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff and the members of the Class have been substantially injured by overpaying for a product that has diminished value due to the fact that it did not provide a 44% increase in memory recall after six weeks of use.

59.     Synergy's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and Synergy is liable to Plaintiff and the members of the Class for the actual damages that they have suffered as a result of Synergy's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against Synergy as follows:

A.     Certifying this action as a class action as soon as practicable, with the Class as defined above, designating Plaintiff as the named Class representative, and designating the undersigned as Class Counsel.

B.     On Plaintiff's Count I, awarding against Synergy the damages that Plaintiff and the other members of the Class have suffered as a result of Synergy's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

C.     On Plaintiff's Count II, awarding against Synergy the damages that Plaintiff and the other members of the Class have suffered as a result of Synergy's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

D.     On Plaintiff's Count I and II, awarding Plaintiff and the Class interest, costs, and attorneys' fees.

E.     Awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:      July 25, 2022
            White Plains, New York

**DENLEA & CARTON LLP**

By:      _/s/ Jeffrey I. Carton_
         James R. Denlea
         Jeffrey I. Carton
         Steven R. Schoenfeld
         Robert J. Berg
         2 Westchester Park Drive, Suite 410
         White Plains, New York 10604
         Tel.: (914) 331-0100
         Fax: (914) 331-0105
         jdenlea@denleacarton.com
         jcarton@denleacarton.com

**KRAVIT SMITH LLP**

Philip M. Smith
75 South Broadway, Suite 400
White Plains, New York 10601
Tel.: (646) 493-8004
Fax: (917) 858-7101
psmith@kravitsmithllp.com

*Attorneys for Plaintiff*